CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 25 2022

JULIA C. DUDLEY, CLERK
BY: /s/ K. Ootyn
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

**STUART R. HAMMETT**, individually and on behalf of persons similarly situated,

    Plaintiff,

v.

Civil Case No.: 5:22CV00018

**VIRGINIA DEPARTMENT OF HEALTH PROFESSIONS** and **VIRGINIA BOARD OF MEDICINE**,

    Defendants

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiff, Stuart R. Hammett, individually and on behalf of persons similarly situated, for his Complaint against the above-named Defendants (collectively, the "Defendants" or the "Agencies"), states as follows:

1. **Definitions**. For the meanings of certain defined terms, abbreviations, acronyms, and pseudonyms used in this Complaint, please see paragraph 1 of the Plaintiff's Memorandum filed herein.

### Jurisdiction and Venue

2. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the United States Constitution.

3. The Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general powers of this Court in equity, including the Court's inherent authority to

enforce in equity the supremacy of federal law as against contrary state law.

4. The Court has jurisdiction to issue a writ of mandamus and other remedies available under state law pursuant to Va. Code § 8.01-644, *Application for mandamus or prohibition,*

5. Venue is appropriate in this district under 28 U.S.C § 1391(b) because the acts and omissions of a Virginia physician which give rise to Plaintiffs' claims occurred in this judicial district.

6. This case is appropriately filed in the Harrisonburg Division because the acts and omissions of a Virginia physician which give rise to Plaintiffs' claims occurred in Augusta County, and because numerous members of the putative class of plaintiffs, and/or seek and obtain health care, in the Division.

## Parties

7. The Plaintiff is the person named in the above caption, and subscribed below, as Plaintiff. Plaintiff is currently unrepresented in this action. Plaintiff and his spouse ("Mrs. H") have resided since 2004 in Pendleton County, at an address of PO Box 93, Riverton, WV 26814-0093.

8. The Defendant Virginia Department of Health Professions ("VDHP") is an agency of the Executive Branch in the Health and Human Resources Secretariat, comprising Virginia's 13 health regulatory boards, the Board of Health Professions, the Prescription Monitoring Program, and the Health Practitioners' Monitoring Program. The mission of the Department of Health Professions is "to ensure safe and competent patient care by licensing health professionals, enforcing standards of practice, and providing information to health care practitioners and the public."

9. VDHP boards license and regulate over 380,000 healthcare practitioners in

2

Complaint
3/23/22

Virginia engaged in any of 62 specified occupations.

10. The Enforcement Division of the VDHP ("VDHP-ED") receives complaints and investigates allegations of misconduct by healthcare practitioners under the authority of VDHP. The VDHP-ED forwards its findings to appropriate Boards for action. VDHP is located at Perimeter Center, 9960 Mayland Drive, Suite 300, Henrico, VA 23233-1463.

11. The Defendant Virginia Board of Medicine ("VBOM") is an 18-member regulatory board, one of the 13 established within VDHP. With the support of some 11 advisory panels, VBOM's duties include all licensing, regulation and enforcement matters with respect to 22 categories of health care provider ("HCP") practicing in the state, including Doctor of Medicine and Osteopathic Medicine (collectively "physicians"); Doctor of Podiatry and Chiropractic; Physician Assistant; various categories of therapist, counselor, and technologist; and certain providers of alternative medicine. Some regulations promulgated by VBOM and pertaining to drug prescribing also purport to apply to Nurse Practitioners, who are licensed and otherwise regulated by the Virginia Board of Nursing. VBOM is located at Perimeter Center, 9960 Mayland Drive, Suite 300, Henrico, VA 23233-1463.

### Proposed Class Action

12. Plaintiff brings this action individually and on behalf of a class of those similarly situated pursuant to Rule 23.(the putative plaintiff class or "PPC") The class is defined as all patients prescribed opioid pain medications ("OPMs") for conditions of chronic pain by Virginia HCP's, who are or may become subject to compulsory drug screening pursuant to Part III, *Management of Chronic Pain.* of Va. Admin. Code §

3

18VAC85-21-60 through 120 (the "MCPRs"), and/or Va. Code Ann. § 54.1-2928.2, entitled *Board to adopt regulations related to prescribing of opioids and buprenorphine,* (2017) (the "OPM Statute").

13. Additionally, or in the alternative, the class is defined as all patients of Virginia HCPs who currently have or may have in the future any complaint against an HCP licensed by VBOM, based on allegations of professional misconduct in any one or more of the categories set forth in Va. Code Ann. § 54.1-2915, *Unprofessional conduct; grounds for refusal or disciplinary action.*, A.1 through A.24 (the "UPCS"). Currently, certain categories of complaints are unlawfully rejected by VDHP-ED upon filing or without appropriate investigation, improperly restricted and/or denied by one or both Defendants, on the stated grounds that such complaints do not involve violations of specific "laws or regulations", a spurious limitation contrary to the clear meaning of the UPCS.

14. As defined, the class meets all the requirements of Rule 23(a). The class is so numerous that joinder of all members is impracticable. Although the exact size of the class is as yet unknown, it is known to be large. There are questions of law and fact common to the class, namely whether the MCPRs and/or the OPM Statute violate the members' rights under the Fourth, Fifth and 14th Amendments of the U.S. Constitution. Plaintiff's claims are typical of those of the class, and Plaintiff will fairly and adequately represent the class within the meaning of the Rule.

15. This case opens a window onto multiple, significant issues of medical ethics and standards of practice which thus far have evaded most public attention and scrutiny by regulators and the courts, concerning practices by HCPs prescribing OPMs to patients suffering from chronic pain ("CPPs"), aka "medication management" ("MM").

4

Complaint
3/23/22

MM providers ("PMM"s) have played unfortunate roles in the inception and perpetuation of the national crisis of drug death and dependency, which continues to grow into its third decade.

16. Plaintiff is not admitted to practice as an attorney before the courts of Virginia. Since July 2018, Plaintiff has made repeated and diligent efforts to contact and engage Virginia counsel in this matter, without success, as described in Plaintiff's Affidavit filed herein.

17. Plaintiff requests that the Court appoint interim counsel for the PPC pursuant to Rule 23(g)(3), believing this to be essential to protecting the interests of the PPC in the preliminary stages of these proceedings. Such appointment, followed by certification of the Plaintiff class and appointment of counsel for the class, will assist the Court in addressing widespread, unethical, and abusive conduct by PMMs, committed under color of Virginia law and/or as agents of the Commonwealth pursuant to OPM Statute and the MCPRs. Legal representation for the class will facilitate the potential joinder of additional defendants, including classes of defendants, should that prove necessary or desirable. Such procedural developments are potentially well beyond what Plaintiff is equipped to handle, even if such a role were permissible.

18. Members of the PPC have the right to receive health care which is ethical and "patient-centered", i.e., delivered in accordance with prevailing standards of care, unaffected by undisclosed and/or conflicting interests of their HCPs, or any other factors extraneous to patient care. The facts of this case demonstrate a growing ethical agnosticism among HCPs which can be checked, in part, by the Court's restoration and enforcement of the full legislative framework of the UPCS and related statutes.

19. The further requirements of Rule 23(b)(2) are met, in that the Agencies have

acted, and/or refused to act, on grounds generally applicable to the class. Accordingly, issuance of temporary and final injunctive relief and corresponding declaratory relief in favor of the PPC is appropriate.

## Statement of Claim

20. This case is a revealing biopsy of the current, dysfunctional state of medical ethics and self-enforcement in Virginia, focusing on the abusive practice whereby chronic pain patients ("CPPs") are forced to submit to mandatory drug testing ("CPPDS") as a condition of treatment with OPMs.

21. In July 2018, Plaintiff was wrongfully discharged from medical care by his PMM, a Virginia practitioner and licensee of VBOM, resulting in the termination of Plaintiff's long history of successful treatment for chronic neuropathic pain ("CNP") with OPMs (collectively, the Plaintiff's "abandonment" or "discharge"). Since then, Plaintiff has been effectively blacklisted and repeatedly rejected as a patient by a series of other PMMs in the region from whom Plaintiff has sought continued care. As a result, Plaintiff's CNP has remained untreated, causing Plaintiff to suffer significant and continuing medical, emotional, and economic harms. Plaintiff's abandonment was based solely on misleading and improperly manipulated results of CPPDS testing of a urine sample taken from Plaintiff on May 31, 2018.

22. <u>Drug testing of chronic pain patients</u>. CPPDS is (a) an ill-conceived and unnecessary intrusion upon patients' personal autonomy and privacy, (b) without precedent or analogy from other areas of clinical medicine, (c) supported by negligible empirical evidence, (d) patently ineffective for any cognizable medical purpose, (e) inconsistent with the doctor-patient relationship as currently conceived, (f) detrimental

6

to the trust and the open communication recognized to be essential in doctor-patient relationships, (g) neither governed by, nor associated with, any widely-recognized standard of care, (h) taught in few, if any, medical schools or other professional training programs for HCPs, (i) commonly conducted under the authority of corporate and/or for-profit entities with control over clinical decisions ostensibly made by HCP employees or contractors, and (j) actively marketed by the clinical laboratory testing industry, as (k) a potential source of significant profit for medical practices.

23. The gross and deliberate misuse of CPPDS by PMM has caused, and continues to cause, direct harm to Plaintiff and other members of the proposed class. In effect, CPPDS is used as a tool of vigilante drug law enforcement, with doctors playing self-appointed roles as figurative drug cops, judges, juries, and jailers. For a tragic number of patients abandoned due to CPPDS practices, it becomes a virtual death sentence.

24. CPPDS is generally uninformed by any notion of fundamental due process. Summary discharge, often without hearing, is a common, final and unappealable life sentence without hope of reprieve. Rigidly uniform, draconian sentences are dispensed to patient "violators", without regard for individual rights or circumstances.

25. Abandoned patients may be unfairly stigmatized and placed on a virtual (though real) blacklist, their status made known to PMMs at large as an unintended consequence of the Prescription Drug Monitoring Program ("PDMP"). When they seek further care from alternate providers, they are often rejected as patients on that basis alone, effectively denying them any form of appropriate, ongoing care for their pain.

26. Multiple, uncontrolled factors can influence CPPDS results, many only poorly

7

understood. Normal variations in metabolism, organ function, etc. affect the rate at which individual drug analytes are broken down and eliminated, before becoming undetectable in patients' urine. With average detection periods of one day or less for several substances, detectable concentrations can nevertheless remain in some patients for periods far beyond the average, even by orders of magnitude. This fact is easily overlooked by providers inadequately trained in interpreting such results, with unjust consequences for their patients.

27. As the sole determinant of a patient's right to continued treatment, CPPDS results are thus potentially misleading and distinctly unfair as applied to certain patients. Exposing patients to such risks of serious medical harm, solely for convenience or to boost the "comfort level" of HCPs and liability insurers, is ethically indefensible. Such practices are unsupported by the medical literature, while many specific (if delicately worded) admonitions to the contrary may be found in both medical journals and agency guidelines.

28. **CPPDS and the Defendants' misfeasance**. Abusive CPPDS practices have been entrenched in Virginia and the wider region since at least 2005, enabled in large part by a trifecta of bureaucratic neglect on the part of both Defendants. These involve (a) the general failure to exercise the full scope (excepting one limited subcategory) of VBOM's disciplinary authority under the UPCS; (b) the failure of VBOM to adequately regulate, limit and oversee the practice of CPPDS pursuant to the OPM Statute, and (c) the Defendants' nonfeasance with respect the Plaintiff's VBOM Complaint as set forth herein, resulting in its administrative dismissal without a hearing or interview of the Plaintiff, despite its obvious merit.

29. **Defendants' duties under the UPCS**. For an unknown period of years, the Defendants have engaged in a policy of systematic nonfeasance with respect to complaints against VBOM licensees. The Agencies have imposed *ultra vires* limitations on their own statutory jurisdictions, implying a seemingly willful misreading of parts of both Agencies' enabling statutes, in which the only complaints the Agencies accept or investigate are those alleging a clear violation of applicable statutes or VBOM regulations, which represents only a small subset of the overall scope of VBOM's jurisdiction under the UPCS. Allegations of purely ethical violations, sexual misconduct, fraud, and most other categories of misconduct set forth in the UPCS are routinely rejected without investigation. By this consistent pattern of neglect, the Defendants have contributed to a declining awareness of, and respect for, traditional standards of practice among Virginia HCPs, including the rise of abusive practices such as those typical of CPPDS.

30. **Inadequacy of CPPDS regulations under the OPM Statute**. In the OPM Statute, the legislature tasked VBOM with promulgating regulations governing CPPDS practices. The MCPRs adopted by VBOM as a result impose mandatory CPPDS on all CPPs, while omitting numerous provisions necessary to protect CPPs from improper and abusive CPPDS practices extant at that time. The MCPRs also fail to establish badly needed, uniform standards of practice for CPPDS. The CPPDS provisions of the MCPRs and OPM Statute are thus unconstitutionally vague and overbroad, both on their faces and as applied to the Plaintiff.

31. **The VBOM Complaint**. Shortly after his abandonment, the Plaintiff filed a complaint with VDHP-ED against his former PMM (the "VBOM Complaint", Exhibit 8),

together with relevant documents establishing a clear violation by the provider of the requirements of VBOM regulations codified as Va. Admin. Code § 18VAC85-20-28, *Practitioner-patient communication; termination of relationship*, paragraph B (the notice of discharge rule or "NDR"), as well as a series of ethical violations related to Plaintiff's treatment, CPPDS testing and discharge. The VDHP-ED undertook an "investigation" (without an interview of Plaintiff, which he had been assured would occur) and delivered confidential findings to VBOM, whereupon VBOM summarily dismissed the complaint without a hearing.

32. In a letter to Plaintiff (Exhibit 13), VBOM asserted that insufficient evidence had been presented "to support a violation of laws or regulations governing the healing arts", a statement belied by documentary evidence of a clear notice violation under the NDR. VBOM's determination was arbitrary, capricious, and clearly erroneous, even under the improperly limited scope of jurisdiction asserted by VBOM.

33. The Defendants' failure to fully investigate and appropriately act upon the allegations forth in the VBOM Complaint, during a time when much of the harms which would result from my discharge was prospective and could have been ameliorated or prevented, was a callous betrayal of a patient in crisis due to the wrongful and illegal actions of a VBOM licensee.

34. **Violations of the Plaintiff's constitutional rights**. The Defendants' acts and omissions, individually and collectively, enabled Plaintiff's abandonment and contributed to his consequent harm, and constituted violations of Plaintiff's rights of due process and freedom from unreasonable searches under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

10

Complaint
3/23/22

35. Plaintiff's discharge directly contravened (a) established public policy in the Commonwealth in support of continuity in patient care, as reflected in common and statutory law, (b) recommendations set forth in a guidance document formally adopted by VBOM and in effect at that time, and (c) sound standards of care supported by the CDC and other governmental agencies, and by a wide consensus in the medical literature.

36. The Plaintiff's interests require a long overdue, independent evaluation of his medical condition and history as pertains to CNP. Plaintiff's discharge caused the suspension of his continuing efforts to access non-OPM and non-drug remedies for CNP. He has since been denied a *de novo* evaluation by a series of pain management providers, with neither medical nor legal justification, even as new, promising treatments appear with increasing frequency.

37. Having been wrongfully denied the proven benefits of his previous OPM treatment, a prudent transition back onto those medications offers Plaintiff the best chance to regain a measure of the quality of life, freedom from pain and high function he enjoyed before his abandonment, with relatively little risk. No providers whom Plaintiff has consulted have disputed this, yet none have offered to treat Plaintiff accordingly.

38. **Violation of the constitutional rights of all Plaintiffs**. This case is an opportunity for the Court to address widespread medical abuse of CPPs and other professional misconduct by PMMs, and to uphold fundamental principles of traditional medical ethics that have been so deprecated by HCPs as to be nearly a dead letter in Virginia, lacking any meaningful oversight or enforcement.

39. As the ultimate gatekeepers to patients' access to pharmaceuticals, it is the

legal and ethical obligation of HCPs to exercise that authority based solely on the interests of individual patients, and not in an arbitrary or discriminatory fashion. In the case of OPMs, a handful of PMMs hold the power of life and death over tens of thousands of Virginians, a stigmatized and widely disadvantaged patient population. These providers have engaged in a *sub silentio* exercise in redlining, for reasons of their own unrelated to the needs of vulnerable persons under their care.

40. Such practices and other forms of professional misconduct have been enabled by the Defendants' neglect and allowed to continue unabated, despite the Defendants' actual knowledge thereof. Such neglect includes the adoption of grossly inadequate regulations governing an unproven and ethically dubious medical practice, while simultaneously affixing the Commonwealth's seal of approval on such practice.

41. The Defendants, at some point, reduced the purview of VDHP-ED, as pertains to VBOM licensees, to a pale shadow of what the legislature specified in the UPCS. They have ostensibly left patients victimized by some of the worst physician conduct imaginable without non-judicial recourse and do a drastic disservice to every patient in the Virginia health system.

42. For the reasons stated, the Defendants' acts and omissions constitute a present and continuing violation of the rights of all Plaintiffs to due process and freedom from unreasonable searches under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

### REQUESTED RELIEF

Plaintiff requests that the Court:

(a) Appoint interim counsel for the PPC pursuant to Rule 23(g)(3).

(b) Certify a class of Plaintiffs as defined above pursuant to Rule 23(b)(2) and appoint counsel for the Plaintiff class.

(c) Enter judgment against the Defendants declaring that:

(1) The provisions of the OPM Statute and MCPRs pertaining to the requirement that chronic pain patients seeking treatment with OPMs must sign treatment agreements and submit to periodic drug screening as a condition of treatment violate the rights of the Plaintiffs under the provisions of the Fourth, Fifth and 14th Amendments of the U.S. Constitution; and

(2) Any consent or authorization for drug screening previously executed by chronic pain patients in favor of a Virginia HCP, pursuant to the provisions of the OPM Statute and/or MCPRs, are void and of no force or effect.

(d) Enter an Order granting preliminary injunctive relief, to be made permanent, restraining the Defendants, their respective officers, agents, servants, employees, and attorneys, including HCPs licensed by VBOM and acting pursuant to the OPM Statute and MCPRs, from:

(1) Participating in the continued enforcement of provisions of the OPM Statute and MCPRs declared by the Court to be unconstitutional, including the requirement that CPPs "consent to" and submit to routine drug screening.

(2) Requiring any patient to submit to drug testing as a condition of treatment or continued treatment with OPMs.

(3) Taking or refraining from taking any action in the care of a patient against the expressed wishes of the patient, including involuntary or summary discharge from care, termination of treatment with any medication prescribed continuously for a chronic condition, reduction in prescribed dosage of such medication, or the imposition

13

of new conditions on continuation of treatment, by reason of the reported results of any drug test performed, or the refusal by such patient to consent and/or submit to testing, pursuant to the OPM Statute and MCPRs;

(4) Delivering or reporting to any third party, in response to a request for a patient's medical records or for any other reason, the results of any drug test performed pursuant to the OPM Statute or MCPRs, or any discharge or change in treatment plan imposed without a patient's consent by reason of such a test result, except by the patient's express consent or the order of a court of competent jurisdiction; and

(5) Refusing to treat or provide care to any current or prospective patient or imposing any condition or requirement on treatment or care for any of the reasons or circumstances described in this paragraph (d), arising under the care of any provider currently or previously providing care to such patient.

(e) Enter a judgment against the Defendants finding and declaring that the Defendants have adopted and maintained an *ultra vires* policy of limiting, discouraging, excluding, rejecting, and failing to investigate potentially meritorious complaints against licensees of VBOM which would otherwise fall within VBOM's statutory jurisdiction under any provision of the UPCS and related statutes.

(f) Enter an Order granting preliminary injunctive relief, to be made permanent, compelling the Defendants to:

(1) Observe and implement the full scope of VBOM's jurisdiction under the UPCS and related statutes, as declared by the Court, including the performance of duties of the VDHP to accept for filing, review, and if merited, investigate and report to VBOM all complaints brought by patients against HCPs licensed by VBOM, alleging misconduct falling within any one or more of the categories set forth in the UPCS, and the duties of

VBOM to accept such complaints and the reported results of VDHP investigations of such complaints, and if merited, to take appropriate disciplinary action as set forth in the UPCS.

(2) Correct all internal or publicly available information maintained by the Agencies, on their respective websites or in other documents, which states or implies that actionable complaints against HCPs must pertain to violations of specific laws or VBOM regulations, and thereafter prominently display on such websites and documents the full text and/or references to the scope of VBOM's jurisdiction under the UPCS as declared by the Court.

(3) Prepare a written statement as to the full scope of VBOM's disciplinary jurisdiction under the UPCS as declared by the Court, to include the full text of the UPCS, which shall be sent to all VBOM licensees and prominently displayed in all clinical settings where patients are seen, for such period as the Court may prescribe; and

(4) Prepare, submit to the Court for approval, and upon approval implement, a detailed plan of remedial training to be completed by all VBOM licensees, all members and staff of VBOM, and investigators in the VDHP-ED, addressing the legal and ethical duties of HCPs toward patients and prospective patients, and the statutory framework for disciplinary action against VBOM licensees under the UPCS and related statutes.

**Relief pertaining to the Individual Plaintiff:**

(g) Appoint an independent physician and/or PhD-level specialist (the "Consultant") with expertise satisfactory to the Court in opioid pharmacology and the treatment of chronic neuropathic pain to conduct a thorough examination of Plaintiff's person and medical history, including relevant medical records maintained by Plaintiff's

current and prior HCPs and such other relevant documents as Plaintiff may produce for such purposes.

(h) Require the Consultant to file with the Court, within such time as the Court may require, a report detailing:

    (1) the general state of Plaintiff's health, including current medical diagnoses, treatment received, and prognosis if known.

    (2) the history, nature, previous treatments, and severity of Plaintiff's chronic neuropathic pain condition.

    (3) all options for treatment currently indicated for Plaintiff's condition under widely accepted standards of care.

    (4) the known medical benefits and risks of each such treatment option, as pertain to Plaintiff; and

    (5) the Consultant's recommendations for treatment of Plaintiff's condition going forward and the basis for such recommendations, including potential medical risks and benefits for Plaintiff.

(i) Enter judgment against the Defendants declaring that:

    (1) The Plaintiff was wrongfully discharged from care in July, 2018, and denied continuing treatment with OPMs, without legal or medical justification, by his prior physician licensed by VBOM, acting under color of Virginia law, on behalf and/or as an agent of the Commonwealth, pursuant to the provisions of the OPM Statute and MCPRs, in violation of the Plaintiff's rights under the Fourth, Fifth and 14th Amendments of the U.S. Constitution; and

    (2) Neither the facts of Plaintiff's discharge nor any related or subsequent occurrence of a non-medical nature (including the filing and prosecution of this case),

shall constitute valid medical or legal justifications for the denial of, or for placing added conditions upon, any form of health care or service hereafter sought or required by Plaintiff, limiting the range of options available to Plaintiff for any appropriate diagnostic and therapeutic procedures, medications, or other care sought or required by Plaintiff, or for any other form of discrimination against Plaintiff by providers licensed by VBOM.

(j) Award to the Plaintiffs their respective costs and expenses, including attorney's fees pursuant to 42 U.S.C. § 1988.

(j) Retain jurisdiction after judgment for the purposes of resolving any future fee disputes among the parties and issuing such further orders as the Court deems necessary to effectuate and enforce the judgment of the Court.

(k) To issue orders granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Stuart R. Hammett, *pro se*
PO Box 93
Riverton, WV 26814-0093
srhammett@yahoo.com
304-567-3139 (land line only)

Dated: March 24, 2022

17

Complaint
3/23/22